## BOOYE *v.* A CARGO OF DRY BOARDS.[1]

*(District Court, E. D. New York.* May 10, 1890.)

SHIPPING—CHARTER-PARTY—CONSTRUCTION—FURNISHING CARGO—DELAYS BY WEATHER.
  Under a contract of charter, absolute in its terms, to deliver to a vessel a certain quantity of cargo per day, the charterer assumes the risk of the weather being such as to forbid handling cargo.

In Admiralty.   Action for demurrage.
*Owen, Gray & Sturges,* for libelant.
*Bartlett, Wilson & Hayden,* for claimant.

BENEDICT, J.   This is an action to recover three days' demurrage in loading the libelant's vessel at Atlantic City, Norfolk, Va., and five days' demurrage in discharging the vessel at New York.

In regard to the detention in Atlantic City in loading the vessel, the fact is undisputed that the vessel was detained three days, and that the detention arose solely from the fact that the weather was rainy, and that the boards, having been kiln-dried, could not be put on board in such weather without damage.   The provision of the charter was as follows:

"It is agreed that the lay days for loading and discharging shall be as follows, if not sooner dispatched:   From the time the vessel is ready to receive or discharge cargo, 30,000 feet per day, Sundays excepted, to be furnished for loading, and quick dispatch for discharging, and that for each and every day's detention of the vessel by default of said party of the second part, or agent, $25.00 per day, day by day, shall be paid by said party of the second part to the party of the first part, or agent.   The cargo or cargoes to be received and delivered along-side, in reach of the vessel's tackles, at ports of loading and discharging."

There is no dispute as to the fact that the vessel was ready for loading at Norfolk at the appointed time, and that, if 30,000 feet of boards had been furnished her each day, she would have been loaded three days sooner than she was.   Nor is there any dispute as to the fact that the sole cause or failure of the charterer to deliver the boards along-side the vessel as agreed in the charter-party was that the weather was rainy, and the boards, which were kiln-dried, would be damaged if loaded in the rain.   Under such a contract, absolute in its terms, for the delivery to the vessel of 30,000 feet of boards per day, I am of the opinion that the risk of the weather is assumed by the charterer. It would have been so easy to have said "weather permitting" that the absence of words of that import indicate an understanding that the weather was at the risk of the charterer.   The words "by default of the party of the second part" mean the default in furnishing 30,000 feet per day along-side the vessel for the loading thereof.   *Thiis* v. *Byers,* 1 Q. B. Div. 244.

In regard to the detention of the vessel in New York in unloading, the evidence makes it clear that the delay was by fault of the master of the ship in not proceeding to the place designated for the discharg-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ing of the cargo on Saturday, or even Monday morning. If he had arrived at the place on Monday morning, even, it is evident that he would have been discharged at once.

The libelant must recover for three days' detention at Atlantic City at the rate provided in the charter. Let a decree be entered in favor of the libelant for $175 and costs.